ALVORD, KELLOGG & CAMPBELL, APPELLANTS, vs. FRANK E. LITTLE, APPELLEE.

1. After the time (10 days) allowed by law for taking an appeal, the appeal not being perfected, the Legislature passed an act allowing thirty days, and extending its provisions to cases in which judgment had already been entered: *Held*, that the act extending the time and reviving the proceeding for obtaining a review by appeal, applied only to the remedy and did not affect a vested right. Two years are al-

Alvord, Kellogg & Campbell v. Little—Opinion of Court.

lowed for writs-of error by which the review could be obtained, and it was competent to extend the time of appealing to the full term of two years, in the discretion of the Legislature.

2. L. entered into an agreement with A. and K. to form a mercantile partnership, and before perfecting their articles or paying up the capital stock, they purchased goods and other property in the contemplated firm name of " A. K. & Co." The terms of the partnership agreement not being complied with by L., the enterprise was abandoned, and afterwards A. & K. formed a partnership with one Campbell, under the name of " A. K. & Campbell," who took the goods previously purchased by " A. K. & Co." and paid for them, and employed L. as their clerk and assistant. L. now sues " A. K. & Campbell" for his services as clerk, and for his services and expenses in going to New York and purchasing the goods which were bought in the name of A. K. & Co." before the firm of " A. K. & Campbell" was formed or contemplated, no promise or agreement to pay for such services or expenses by " A. K. & Campbell" being alleged or proved, except as to the charge for services as clerk. The judge charged the jury that the latter firm was not liable for plaintiff's services in behalf of " A. K. & Co.," but the jury brought in a verdict covering plaintiff's services and expenses in the purchase of goods for the contemplated firm of " A. K. & Co." of which he was a part : *Held*, that the verdict was against the evidence, contrary to law and to the charge of the court, and should be set aside and a new trial granted.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*A. A. Knight* for Appellants.

*C. P. Cooper* for Appellee.

THE CHIEF JUSTICE delivered the opinion of the court.

The case having been reached in its order, the argument upon the merits was opened by counsel for appellants. Counsel for appellee then submitted his argument and brief, in which he raised the objection that the appeal in this cause had not been taken according to the provisions

of the statute, and that this court for that reason was without jurisdiction. We feel strongly inclined to reprehend this course. It was the duty of counsel to bring such questions to the attention of the court before an entire day had been consumed in hearing the case upon the merits. It is a severe trial upon the frailty even of judicial human nature to spring such a question in the midst of the argument and open a brief upon it, thus showing that the alleged defect was known in advance.

As a question of jurisdiction is suggested we will consider it.

Upon the overruling of a motion for a new trial, the judge allowed an entry to be made in the minutes giving thirty days to perfect an appeal. The statute allowed ten days after the close of the term to take an appeal in cases at law, and the appeal not having been perfected by giving the bond within the ten days, the judge thereafter properly declined to approve the bond, (though the appeal had been prayed in open court,) on the ground that the time had expired. The Legislature, being in session, passed an act to extend the time within which appeals can be taken to thirty days, (Ch. 3008, Laws of 1877,) and provided that it should "relate to all cases wherein appeals have been made, attempted, or sought to have been made, within thirty days from the passage of this act." Under this act the appellant filed his bond for appeal, which was approved, and upon the appeal so made the record is brought here.

The question involves the power of the Legislature to revive a right of appeal after the time has expired.

This matter has been so thoroughly discussed by the courts of various States that we are not required to treat it as an original question.

In Commonwealth vs. McGowan, 4 Bibb, 62, the court remarks : " The remedy only being barred, the legislature

were competent to remove the obstacle by furnishing a new remedy ; and whether this is done by a repeal of the statute, or by giving a new law posterior and consequently paramount to the old one, cannot be material in testing their power to do so." S. P. Graves vs. Graves, 2 Bibb, 207.

In the case of Davis vs. Ballard, (1 J. J. Marshall, 563,) a judgment was rendered in March,.1823, and in March, 1827, a writ of error was sued out, the law allowing three years only for that purpose. In .January, 1827, the legislature enacted that the period of time between November 31, 1824, and April, 1827, should " be deducted from the time allowed by law in any plea, motion or suit, in which the statute of limitation of writs of error may be plead or relied on." The court in a long and very able -opinion, while condemning " retrospective legislation," upholds the right of the legislature .to regulate the practice and proceedings in the courts of justice, and sustains the act. It disturbs no vested right of property.

In Henderson & Nashville R. R. Co. vs. Dickerson, 17 Kentucky, (B. Munroe, 173,) an appeal was dismissed because not taken in time. Subsequently the legislature passed another act extending the time of appeal in such cases, and a second appeal under the later act was sustained.

In Alabama the decree of a Probate Court was rendered in November, 1864, and the statutory time for appealing had elapsed in 1866, when the legislature passed an act that from any decree of a Court of Probate rendered between January 11, 1861, and September 25, 1865, an appeal might be taken six months from the passage of the act. The Supreme Court remarks that the establishment, repeal or alteration of the law of limitation as to time of appeals to the Supreme Court, is not referable to an authority to affect the jurisdiction of this court as established by the constitution. The fixing and altering of the period of limitation to appeal is but an exercise of the power to regulate the juris-

diction of this court, not the assumption of control over it. The power of the legislature to pass any law affecting a title to property is denied as standing upon a different principle. Page and wife vs. Matthew's administrator, 40 Ala., 547.

This case is very similar to the case at bar. We are not called upon to decide how far the Legislature may go in reviving a right of action upon a *claim barred* by the statute of limitations. In Bradford vs. Shine, (13 Florida,) this court held that the Legislature might repeal a statute of limitations before it had fully run upon a claim, and thus deprive a party of its benefit; and that as to the "statute of non-claim," a repeal *after* the statute had attached, did not revive the right to prosecute, the claim being "barred." We cannot discuss the question here for it is not raised.

The limitation of the time for procuring a writ of error was fixed by law at two years. This was the law in existence in 1870 when the "Code" was introduced, which superseded the former practice and provided that an appeal might be taken within two years after judgment. It was never questioned that as to all cases pending, the right to a writ of error was taken away, and that the party was entitled to an appeal within two years from the entry of judgment. Now the time for suing out a writ of error in the case at bar is two years under the existing law. The writ of error is a means of bringing before the appellate court the proceedings of the inferior court. The time, therefore, within which the parties in the present case might bring their case up for review is two years. Can it be questioned that the legislature might extend the time for review by means of an appeal to the full term of two years, even without repealing or taking away the writ of error, but leaving both remedies to stand and leaving parties to pursue either of these methods as might be convenient? In the light of past legislation and the practice of the courts, we cannot permit a doubt to prevail. The act in question

scarcely comes within the definition of retroactive legislation. It merely permits a party to bring up a cause for review, within the time already provided, by a process different from that already allowed, but not infringing any rights of property already established.

This cause is therefore properly before this court upon the appeal perfected within thirty days after the expiration of the term of the Circuit Court.

This is an action of assumpsit brought by Little against the defendants, appellants, as partners. The defendants pleaded the general issue and a set off.

The facts as shown by the record are:

That in 1875 plaintiff made an arrangement with Alvord and Kellogg, two of the defendants, to form a partnership in the name of Alvord, Kellogg & Co. in certain mercantile business at Jacksonville, the preliminary agreement being that each party should raise a certain sum of money with which goods were to be purchased. The parties afterwards proceeded to New York, where they met and proceeded to make some of their contemplated purchases, but while in New York plaintiff, finding that he had been disappointed in regard to funds, and Alvord being unwilling to proceed unless plaintiff raised his share of the capital, it was concluded that the enterprise should be abandoned.

Some of the goods that had been purchased in the name of "Alvord, Kellogg & Co." had been forwarded to Jacksonville, and other purchases were countermanded. Before plaintiff had proceeded to New York, and in pursuance of the original agreement, he had attended a sale of the effects of a bankrupt estate and purchased in the name of the contemplated firm a lease-hold interest in a store and a few hundred dollars worth of goods, which were paid for with money advanced by Alvord & Kellogg, and had advanced a small sum to pay for insurance thereon.

Afterwards, in December, 1875, Alvord & Kellogg

formed a copartnership in the same business with Camp-, bell, under the name of Alvord, Kellogg & Campbell.

The goods purchased in New York by the inchoate firm of which plaintiff was a member were paid for by Alvord, and put into the stock of the new firm to his credit, the property purchased in Jacksonville being also put into the stock of the new firm by Alvord & Kellogg.

When the firm of Alvord, Kellogg & Campbell commenced business in December, 1875, they employed plaintiff to assist them in opening and marking the goods and arranging the store, and he continued in their employ until March, 1876.

This suit is brought against the members of the firm of Alvord, Kellogg & Campbell upon an account, stated as follows:

For expenses incurred in purchasing store and stock from assignee in July, 1875 .................. $27.50

For expenses to New York and return, and expenses in New York, cash paid out ............. 220.00

For labor in purchasing stock in New York...... 125.00

For cash paid for insurance on $1,000 ........... 25.00

For cash paid for three months' ground rent...... 75.00

For services in arranging and marking stock from December 27, 1875, to March 4, 1876......... 300.00

For one-third profit on merchandise and fixtures.. 150.00

The facts as above detailed appear by the evidence on the trial. Plaintiff testified to the correctness of the several items of the account, except the last item of $150, and claimed that the firm of Alvord, Kellogg & Campbell owed him thereon $772.50, subject to their account against him of $202.95. He testifies that his services from December to March were worth $300. Alvord and Campbell testify that the services were worth not to exceed $150. There is no testimony whatever tending to charge Alvord, Kellogg & Campbell with any liability for any other item

of the claim, excepting the services from December to March. Plaintiff says, in his testimony, that he "claims that they owe" him these several amounts. The defendants each deny that they employed him or promised to pay him, except for his services as clerk for the time mentioned. The plaintiff does not testify that they did promise to pay him, nor does he state any fact or conversation with defendants in regard to their liability for any other item, except for such services as clerk.

The charge of the court to the jury is not given in the record, beyond certain propositions submitted by both parties in regard to the law of partnership and the liability of partners, not very material to the issues presented and given to the jury, and the following proposition presented by defendants' counsel, to wit: that the firm of "Alvord, Kellogg & Campbell" are not liable to the plaintiff for any claim he may have against the firm, or the members of the firm of "Alvord, Kellogg & Co.," was given by the court to the jury.

The jury returned a verdict for the plaintiff for three hundred dollars.

Defendants then moved to set aside the verdict and for a new trial, upon the ground that the verdict was contrary to the evidence; contrary to the charge of the court, to the weight of the evidence; that the charge of the court was conflicting and misleading; and because the jury took with them to the jury room the declaration and the plaintiff's bill of particulars, and did not take the defendants' plea. The court overruled the motion, and defendants excepted. Judgment was entered upon the verdict and for costs against the defendants.

The grounds of the motion for a new trial, that the verdict was directly contrary to the evidence and to the charge of the court, are the only ones available, as the case is presented to this court. It certainly requires no argument or

references to the books to show that Alvord, Kellogg & Campbell, the defendants in this suit, are not liable to this plaintiff for any services or moneys expended by him for and in behalf of the contemplated firm of Alvord, Kellogg & Co. (of which the plaintiff was a party in interest). There could be no liability for such services or expenditures, unless they made themselves liable by some agreeement or promise to that effect. There is no pretence of any such promise. Plaintiff in purchasing and insuring the goods at Jacksonville, in going to New York and purchasing goods for Alvord, Kellogg & Co., was performing services and expending money for himself and his intended partners, and if he has any demand for this it is not against the firm of Alvord, Kellogg & Campbell, which was formed afterwards, and with whom he had no transactions, except to assist the new firm in the capacity of a clerk. And there being no testimony whatever tending to charge these defendants with anything beyond the value of these services as an employee, the utmost that could be allowed him was the value of such labor, estimated by him at $300, and by defendants at $150, against which he admits an offset of over $200.

This verdict of $300 was therefore entirely unwarranted by the evidence, and was directly against it, and against the instruction given by the court, and against the law, and not merely against the weight of evidence. It is a verdict against A. for the alleged indebtedness of B.

The legal inference, from this proposition, and in view of the facts as proven, is that the verdict was based upon some influence other than that which should have been produced by the very plain and simple proofs before us in this record. We are always reluctant to set aside the verdict of a jury, and have never done so except in very plain cases of the violation of proper rules of law or the palpable disregard of the facts as they are shown to us, and we will not do so in any case merely because we do not agree with the jury in

weighing the evidence. In this case there is no aspect in which the facts as presented, under the charge of the judge, can be made to produce this verdict without violating the plainest principles of justice. The rule as laid down by this court in Schultz vs. The Pacific Insurance Co., (14 Fla.) and in several other cases found in our reports, requires that this verdict be set aside as against evidence and in violation of the law. There is, moreover, some ground to apprehend that the jury were led into error by the instructions given them at the request of counsel, upon matters not pertinent or proper for their consideration, and tending to confuse the minds of the jurors and divert them from the real issue in the case.

The judgment is reversed, and a new trial must be granted.